We're happy to have you with us to hear argument in our fourth case, Courthouse News Service v. Schaefer. Also, if you want to, Mr. Matheson. May it please the court. Good afternoon, your honors. My name is Mike Matheson. I represent two independent elected state officials, the clerks of court for the city of Norfolk and county of Prince William, Virginia. Your honors, this lawsuit has involved a sweeping audit of the efficiency with which these state courts process new civil filings. CNS has sought and won federal supervision of these state courthouses under the auspices of the First Amendment. The systems under scrutiny involve nascent technology initiatives, including systems that are designed and maintained by an independent state agency. Ultimately, the district court concluded that the processing of newly filed civil complaints in these jurisdictions is unconstitutionally slow. Disposing new First Amendment law, the district court concluded that the First Amendment demands that state jurisdictions that state judiciaries provide contemporaneous access to newly filed civil complaints defined. Excuse me just a minute. Aren't there a bunch of these cases? This isn't new First Amendment law. Well, your honor, in this circuit, it's new. And so there have been three circuit court decisions that have dealt with this First Amendment issue. There's the Ninth Circuit's decision in Planet. There's the Seventh Circuit's decision in CNSB Brown. And now this court is taking up the issue. There are numerous district court decisions across the country that have grappled with this as well. But the First Amendment issue, your honor, I do believe is a case of first impression in this country, at least as it relates between the distinction between the common law and the First Amendment. Firstly, while the Seventh Circuit and CNSB Brown expressed serious doubt about the applicability of the First Amendment, they didn't actually directly address the issue. The Ninth Circuit case in CNSB Planet, it was held there that the Ventura County clerk had waived any argument about the applicability of the common law versus the First Amendment under the law of the case doctrine because in prior proceedings, that argument hadn't been raised. So the issue regarding whether or not the common law or the First Amendment governs this dispute is not only a matter of first impression in this circuit, but in all federal circuits. So the district court ultimately concluded that the First Amendment demands that state judiciaries provide contemporaneous access to newly filed civil complaints, which was not... I don't think that that was quite what the ruling was. Was there a give in the amount of time? Well, contemporaneous was defined, Your Honor, to mean same day if practicable, otherwise the next day. And then when that standard was applied to the facts, the court held that there was a threshold percentage of 85 to 90 percent, which essentially serves as a federally ordained floor on the administrative efficiency of these you know, when we're talking about the common law versus the First Amendment, it's important to keep in mind that this case is not a referendum on the common law rule of openness. For many decades, in fact, one court I read said that it predated the U.S. Constitution itself. Virginia law and the federal common law had presumed a right of the public to inspect and copy all judicial records and documents. The clerks are very solicitous of these common law rights. In fact, the district court, according to the district court, the most damaging evidence of an unconstitutional custom or practice was the fact that as soon as the clerks became aware that CNS was dissatisfied with its level of access, CNS reported that the problem was quickly rectified. Thereafter, we proceeded to litigate this case for many months. All the while, CNS conceded that it was receiving everything that it ultimately asked for a trial. Unlike the common law, this court has repeatedly held that the First Amendment guarantees access to judicial proceedings and specifically judicial proceedings that, quote, adjudicate substantive rights. A necessary corollary is the right to access judicial documents that are sought in connection with those judicial proceedings. At the core of this test is the definition of judicial proceedings are hearings or substitutes for trial. Examples, like in the Rushford case, where a summary judgment motion was deemed to be an adjudication of substantive rights that was a trial-like atmosphere. Or in the criminal realm, in N. Ray Washington Post, this court held that criminal plea hearings, sentencing hearings, or criminal trials are protected by the First Amendment. This court held that the judicial decisions adjudicating a summary judgment motion were also encompassed within these First Amendment guarantees. A complaint is not a judicial proceeding. Rather, it is the beginning of litigation. The complaint does not adjudicate any substantive rights. In the 2016 opinion, ACLU v. Holder, the Eastern District of Virginia rejected a First Amendment challenge to automatic sealing provisions under the False Claim Act, reasoning that the adversarial process does not even begin until a complaint is served and the defendant files a response. The district court grounded its decision that the First Amendment guarantees access to newly filed civil complaints under the experience and logic test. The experience and logic test has two prongs, the history and the logic prong. The history prong asks whether the place and process has historically been open. And the court concluded, and I quote from page 1495 of the Joint Appendix, there's no dispute that historically courts have openly provided the press and general public with access to civil complaints. The clerks don't dispute that either, but this is merely a restatement of the common law rule of openness. The touchstone of First Amendment protection is openness of historically open proceedings and not merely the fact... Go ahead. Thank you. Another litigator can just talk with one breath. So, you know, you recognize that the civil complaints fit into the experience and logic test. Well, Your Honor, I recognize that... I don't recognize that civil complaints fit into this experience and logic test. And here's why, because... I thought you just told us they did. Well, no, what I said was that the district court concluded that civil complaints have historically been open, but that is merely a restatement of the common law. That is not what the First Amendment guards against. When the experience and logic test is talking about openness, it's talking about openness of particular judicial proceedings. So let me illustrate by, you know, if we talk about the recent opinion in Company Doe versus Public Citizen. This is a 2014 decision from this court. The harm that is articulated in that case is that due to sweeping redactions and the pseudonymous plaintiff in that case, that, quote, neither the public nor the press was able to monitor the progress of the litigation as it unfolded. This relates to the ability of the public to observe and participate in historically open proceedings and specifically proceedings that are adjudicating substantive rights. So when we talk about openness, it's the openness of the proceedings themselves and not merely the ability of the public to access documents that's important. And... Well, maybe not merely, but why isn't that in the same category, in the same basket of things? Well, Your Honor, because because the court has never articulated a temporal aspect to this First Amendment right. So in the Company Doe versus Public Citizen case, the court said that there is a minimal invasion of the right to access these documents can wreak a First Amendment harm. And of course, when we're talking about the ability of the press to monitor the progress of the litigation, this becomes very important. If the public is not able to see the sweeping redactions or even identify the party that is suing the CFPB in that case, then there's no ability for the public to consume and understand the proceedings as they're unfolding and happening. What CNS is doing... Access promptly. Well, I believe that what that reflects is that there's a good reason to require that access to of the proceedings that are at issue in the case. What CNS is doing in this case is they're trying to generalize this principle of law, which is that certain proceedings that adjudicate substantive rights and the documents that are sought in connection with those proceedings, which is a term of art that this court has used repeatedly in the jurisprudence. They're trying to generalize that and say, regardless of whether the documents are being sought in connection with the judicial proceeding, we should be able to observe those documents from the very beginning. Can you explain to me what the harm is in this? The district court took the order that he issued right from the facts of this case. Your client was able to do this. Yes, Your Honor. Our client was able to meet the standard. What is the harm to your client by ordering your client to do this? The harm to the harm to my client, Your Honor, is that there are momentous issues of federalism and there are momentous ramifications of this decision for the operation of state court clerk's offices across the country. What are you just litigating this on principle then? No, Your Honor, we're not litigating this on principle. The court held that we had violated the rights of CNS and we don't believe that we ever violated the rights of CNS in this case. It was undisputed virtually from the beginning of this litigation that CNS was already getting all of the access that they sought. We really do know the facts. In the beginning, they did not get the access. They asked for it. It took two, three months, four months. I don't know. But finally they did. But it was because they came in and made a threat of sue, right? Well, I disagree with that, Your Honor. And the court's justification... It wasn't two, three, four months that you weren't compliant. According to the district court, it was two, three or four months, Your Honor. But there's a couple of... But your facts are different. You have facts in the record that I can turn to you that will show that that was different, that was wrong. Well, Your Honor, the facts that we would point to in the record relate, first of all, to the sufficiency of the evidence that the court relied upon in making these determinations. Judge Morgan had a bench trial and he made findings of fact and conclusions of law. His findings of fact are the facts unless they're clearly erroneous. He got a trial. That doesn't happen very often in these cases. Well, Judge King... You all litigated this thing and he wrote it all down, wrote a 50-page opinion. So you have to accept his facts unless you can prove to us or show us that there's clear error. Well, Your Honor, actually, I believe that on the sufficiency question, the standard of review should be de novo. We made a motion for a judgment as a matter of law. On sufficiency, I'm talking about his findings of fact and conclusions of law are set forth in that memorandum opinion. And the factual findings are reviewed for clear error and the conclusions of law are reviewed de novo. That's the standard. Well, Your Honor, to the extent that, I mean, the case that we're relying on for the idea that a challenge to the sufficiency of the evidence of delays in this case is reviewed de novo is Anderson v. Russell, 712 F3D 865. I think I'm talking past you or you're talking past me. Well, Judge King, if we disagree about the standard of review, then I will... There should be evidence of the legal issue. I agree with that. But findings of fact are reviewed for clear error. Well, Judge King, let me, perhaps I can illustrate where we're coming from on this if I talk about some of the deficiencies that are uncontroverted in the record. I mean, there were not factual disputes that were resolved in CNS's favor. There were things that came out at trial that related to the sufficiency of the data that the judge was relying on that, in our opinion, no reasonable fact finder could conclude that there was sufficient evidence to show that the delays at issue existed here. And just to give one example, the data in this case that the district court ultimately relied upon in conducting its de novo review came from the Office of the Executive Secretary of the Supreme Court of Virginia, which is an independent state agency. And this is machine data that's administered and maintained by the Office of the Executive Secretary. One example, if a filing fee, for instance, if a complaint is filed in the clerk's office on day one, it gets a file stamp. If the filing fee is incorrect, then the clerks don't docket it. And that's under 8.01-331. And all this was brought to the attention of the court. So under 8.01-331, the case is just sitting there. The clerk calls the filer and says, hey, you didn't pay your filing fee. I'm going to go back and fix this. Maybe they come in in two days. Maybe they come in in three days. Maybe they come in five days. The evidence at trial, the uncontroverted evidence at trial, was that these problems were widespread. They happen every day. But if you look at the delays, the actual percentage of delays that are expressed in the court's data, they contain perhaps delays that are attributable to the clerk's process, but they also contain delays that are attributable to filing fees, which is a factor that's completely beyond the court's control. Now, the only response from CNS was that this had been presented as a theoretical possibility and that they were unable to quantify it. And the court basically said the same thing. Well, Mr. Matheson, if you're unable to quantify this evidence, then I don't know what you want me to do with it. Well, other than saying that it happens every day, nobody can quantify this matter in which we must determine whether the First Amendment applies under the experience and logic test. Do you lose? No. We don't believe the experience and logic test applies. I understand you don't believe it, but if we believe it does, then do you lose? No, Your Honor. I understand you don't believe it. I understand your point. You say it does not lose. No, Your Honor. We don't. I mean, why not? The definition of contemporaneous is at the heart of the First Amendment question. So once we decide the First Amendment applies. So what do you suggest is the definition of contemporaneous? Well, I think that contemporaneous, as the court in CNS, as the Seventh Circuit in CNS v. Brown said in overruling their prior decision in Grove Fresh, I believe that contemporaneous has never been meant in any decision from the Supreme Court of the United States, or certainly not from this court, to be measured in a matter of minutes or hours or even days. So if we look at the court's conclusion, even if we take it at face value that the vast majority of the complaints are being tendered within three court days of the initial filing, and even if we look past all of the problems with the sufficiency of the evidence that the court relied upon, I don't believe that those numbers reflect a constitutional violation. As Judge Brinkham has said in the ACLU v. Holder decision, Your Honor, the adversarial process does not even begin until the complaint is served and a defendant appears, usually after 21 days, and files a response. Similarly, if we look at the summary judgment motion in the Rushford decision, you know, summary judgment motions are usually filed, and then there's another 14 days followed by another seven days of briefing before a hearing is even scheduled. The federal court system does not operate in a matter of minutes or hours or days. CNS is only seeking access to this information because they claim that the information is newsworthiness, but newsworthiness alone has never been a higher value that has been adjudicated under the First Amendment. Rather, the court has always relied on the common law, and honestly, the common law standard is the best standard of care you could possibly articulate here, because the common law requires us to look at the reasonableness under the totality of the circumstances. So certainly, if a member of CBS News comes into the clerk's office and says, I want to see a copy of the complaint that was filed in Jane Doe v. John Smith, it would probably be unreasonable not to give that person a copy of that complaint on the spot. But that's not what this case is about. CNS is coming into our courthouses at the very end of the day, and they're saying, show me everything that was filed now. That is a much more onerous request, particularly when maybe the mail didn't arrive until three o'clock, maybe somebody came into the clerk's office at the end of the day, and they dropped it. Did you tell the district court that? Did you have witnesses saying that this was so onerous you couldn't do it? We didn't say that it was so onerous that we couldn't do it, but we certainly adduced significant testimony, both from deputy clerks and from the clerks themselves, that talked about what their process was, what time the mail comes in, what time CNS comes in. Please correct me if I'm wrong on the facts here, but I thought that there was a period of time in which you voluntarily did this. Your Honor, no, that's not correct. It's not true. That didn't happen. What the court held was that there was a voluntary sensation, and we argued under abstention principles, under mootness, or under general equitable principles that this case should have been dismissed. In finding that the case was not moot, Judge Morgan held, excuse me, the district court held that there was a voluntary cessation, but there was no evidence of a voluntary cessation. The evidence was that we didn't even know who CNS was until this lawsuit was filed, and that as soon as we were on notice of the fact that they thought that there was a problem, that the problem quickly rectified itself. That doesn't show anything other than good faith on behalf of the clergy. Let me ask you, apparently your time is kind of statement as to what contemporaneous is not. What is it then? Assuming that the experience and logic test applies, then what would you say is contemporaneous? Well, Your Honor, I believe that the First Amendment, because it's rooted in the adjudication of substantive rights and the ability to observe proceedings, that immediate and contemporaneous would have to relate to the process in question. So if there's a summary judgment hearing, immediate and contemporaneous wouldn't be three weeks after the hearing is concluded. If it's a criminal sentencing hearing, immediate and contemporaneous wouldn't mean- What would immediate and contemporaneous mean insofar as being able to access civil complaints? Well, Your Honor, I have grappled with this issue at length, and the only standard of care- Isn't that kind of the issue before us? If we consider that there's experience and logic test that applies, and we say the First Amendment applies, and we have case law here that says contemporaneous, then brings in this whole business, could be an infringement on the First Amendment. So live in that world is where I'm saying, and then you've told me everything is not with regard to the filing of civil complaints, and I'm simply asking you, since you say Judge Hudson is totally off his rocker. Well, you didn't say those words, I know that because you're more on it. So what then, if we are in that venue of First Amendment on experience and logic, what then do you say under these circumstances? I'm not talking about all the different proceedings, unless I'm talking about filing the complaints, what's contemporaneous? I think that the court has two choices. The first choice is that the court draws a bright line, which is what the district court did, which is same day if practicable, and if not, the next day. Or the court can simply do what has always been the common law and say reasonable under the totality of the circumstances. And let me tell you why it is a bad idea for this court to go with the same day of practicable standard, because aside from the momentous issues of federalism and the fact that this is going to usher in an unprecedented era of federal entanglement with state court judiciaries, this court is going to suffocate the ability of the states to implement nascent technologies, to resolve disputes over access to complaints themselves. The federal system has a huge technology advantage over the state courts. You act like the First Amendment doesn't apply to the state of Virginia. The First Amendment... It's the Supreme Law of the land. It's written in the First Amendment. It's written in the Constitution. In Virginia, you have to write it. Judge King, we're not contending that the First Amendment doesn't apply and that it's not important. We're saying that it does not attach in this space. It's not triggered by the mere... It's the Supreme Law of land. That's what the Constitution says. Well, but Judge King, this court has never said that the mere filing of a document triggers First Amendment scrutiny. Counsel, you are almost eight minutes over your time. If you want to continue, this time is coming off your rebuttal time. No, I would like to reserve the balance of my time. Thank you, Your Honor. I'd like to reserve the balance of my time. Thank you, Your Honor. Okay. Thank you. I'm not sure who goes first. Mr. William Hipsher? Yes. I'll be just here for a minute. Good afternoon, Your Honors. William Hipsher for Courthouse News Service. May it please the court. Courthouse News is a newswire service that provides daily reports on newly filed civil complaints in courts across the country. Its subscribers include lawyers, academics... You know you're not going to waste your time telling us that, I hope. You know you're not going to give us a... I know you're not going to give us a history. We've got some keen issues we need to get to here. So go right to it. I'm not trying to cut you off, but you have a limited amount of time. If you spend time on that, this is going to end and we won't get to them. So go right to the issues. So the issue in this case is does the First Amendment right of access apply? And the clerks conceded in their first filing below that this court would likely find a First Amendment right of access should not apply until the occurrence of some historically open judicial proceeding in a case, suggesting that the press and public must wait until an actual proceeding. Mr. Matheson even referred to 21 days until an answer is filed. But this court has already extended the First Amendment right of access to complaints filed, yes, in connection with summary judgment. Mr. Matheson did not mention that Company Doe also extended the First Amendment right of access to civil docket sheets. And civil docket sheets are hardly judicial proceedings. The district court here noted that a complaint frames the issues for trial just as summary judgment is a substitute for trial. And in finding that a First Amendment right of access exists as it applies to complaints, the district court applied both the experience and logic test and the analytical test and found that both were satisfied. And as to the historical availability of complaints to the press, the district court concluded in paragraph eight of its findings of fact that historically the press had access to complaints at the end of every day. And the federal courts who have considered this issue found a First Amendment right of access to complaints. Now in timing, the district court followed this court's dictate in Company Doe, which held that where a First Amendment right of access exists, access must be contemporaneous. And Company Doe stated that the public benefits of open proceedings are compromised by delayed disclosure of documents and then said that each passing day may constitute a separate and cognizable infringement. And this court has not limited its First Amendment access jurisprudence to situations in which a record has been formally sealed. In defining contemporaneous access, the district court first reviewed dictionary definitions of that term at or near the same time and then noted that legal news, like other news, has a very short shelf life and ultimately concluded that contemporaneous access to new complaints needed to be on the day of filing insofar as practicable. And if not practicable, within one court day, stating that 85 to 90 access would suffice. I want to emphasize that courthouse news has not sought immediate or access at the moment of filing, as the clerks repeatedly suggest. What courthouse news seeks is access by the end of the day of filing so that it can advise its readers that night. And that is what the district court ordered. As for the clerk's repeated denial... So what does that mean? I don't know if you... Can you hear me? Because it sounds like you're breaking up. Okay, because you're breaking up a little bit. Maybe this internet will catch up with us a little bit. It's been a good day so far, but it looks like at the end of it, even Judge Motz is beginning to look a little fuzzy here. I just want to ask, when you talk about access, we throw those terms around pretty loosely. Technology has come to play in this. And it's not what the founders were dealing with on access. And we're kind of in a different day and age. And yet you give me a textbook definition of access. Tell me again, what are you saying about access in the same day? What does that mean? What the district court held was that contemporaneous access in this context means that the press and the public were entitled to see filed complaints by the end of the day on which they're filed. And he said, we're practicable. And he accounted for the possibilities that the clerks raised in the course of the trial. And he said that 85 to 90% access same day would suffice. And significantly, the court noted that over the months between the filing of the complaint and the trial, access in these courts improved dramatically. So that by the time of trial, access in both courts were at 90 and 92%. Okay, counsel, can I ask you, that's what I understood. But is your submission to us then that all that is required is this 80 to 90% or whatever it is you just told us? Is that what you said to us, sir? The district court ordered that- I understand what the just, but is that what your position is now? That is our position. We are seeking an affirmance of the district court's order. I understand you're seeking the affirmance, but you keep talking about immediate access and quoting the language that is the next day or the next day if necessary. So you don't embroider it with what you just said to us. So that's why I'm, I am confused. So I look to you to clarify things for me. Okay, I may have misspoke or I may have broken up. What I tried to emphasize is that Courthouse News was not seeking immediate access or access at the moment of filing. Now to judge- No, I heard that. Sorry, Your Honor. I thought you said you wanted the same day or if necessary, the day after. But instead, you think there is the kind of leeway that the court talked about. Is that correct? I believe the court provides very little leeway, but some. The court's definition of contemporaneous access is the historical access that the press has had. And that is on the day of filing. By the end of the day, the kind of access that these clerks were able to achieve months after this case was filed. I do really understand that. Remember, you talked to me just a few minutes ago, you talked to us about 80 to 90 percent, or they did it within the 90 percent range after suit was filed. You don't remember any of that. No, I do remember that. That's exactly what Judge Morgan ordered. Judge Morgan ordered that 85 to 90 percent of access to newly filed cases on the same day would suffice to meet his contemporaneous access requirement. Now, Judge Winn, to your point about technology, Judge Morgan also observed that the advent of new technology in courts across the country could have a real impact on this issue. But in the Commonwealth of Virginia, in both of these courts, fewer than 10 percent, much fewer than 10 percent are electronically filed. So we are still dealing with a paper court. And in this paper court, Judge Morgan concluded that contemporaneous access would be allowing the press to see what they have seen in courts across the country for decades. See the cases by the end of the day of filing. And Judge Morgan found that the access improvement in these cases was a significant fact. He observed that access had steadily improved, not within a couple of months, but in the course of the 18 months between the filing of the complaint and the time of trial, access improved from a low of 19 percent same day access to 92 percent in Norfolk and from 42 percent to 93 percent in Prince William. And the court noted that this improvement in access undermined the clerk's general claims of potential disruption if constitutional access was provided. And the clerks admitted that they hired no additional personnel. No procedures were disruption of their offices. And as to the comment about voluntary cessation, they argue that there was no voluntary cessation of the offending conduct, but they concede in their brief that it was only natural for them to speed up the processing of newly filed cases once the complaint in this in this action was filed. Does it does it is it is it mandated? I mean, it seems like to me there's been some effort to come together on this, at least in terms of the clerks. There's been articulated some reasons that would indicate, well, we've got some internal problems is going to make it really difficult for us to It just seems to me, I don't know, is this a one if we if we go with the First Amendment and say it applies and then we try to add as what was said a bright line rule on this. Does this apply to rural county like it does to a metropolitan county? Does that mean that you've got different places all over and for us to articulate a rule that is bright line? Is that something you you articulate I guess I'm going to the contemporaneous issue on this. Well, Judge Morgan addressed that issue and pointed out that the measure of contemporaneous might be different in courts, depending on their budgets or staffing or other factors. And so when he said same day where practicable, he was giving the courts some wiggle room. He was not providing a bright line rule and his ultimate declaratory judgment was informed by the fact that for a number of months prior to trial, the clerk seemed to be able to meet not only his threshold number, but seem to be able to exceed that. Now, I also want to point out that that once the court concluded that courthouse news met its of establishing the substantial delays, the burden shifted to the defendants to offer evidence on their purpose in delaying access. And the district court concluded that the clerks did not provide any evidence at all, either under the strict scrutiny or the intermediate scrutiny standards, that they failed to introduce evidence that their practices were narrowly tailored to serve either a compelling or substantial interest. Your Honor, the clerks moved to dismiss this case on the grounds of mootness, and we believe that the district court properly exercised its discretion in rejecting the mootness motion, noting that mootness is unavailable when a party quits its offending conduct partway through a litigation. Well, one of the arguments that you've made is that these delays are attributable to the clerk's practices of processing these claims before making them public. But can you tell me how much the delay is attributable to other factors, like incorrect filing or fees or redacting of private information? Well, Your Honor, incorrect filing fees is an argument that the clerks made before the district court, and the district court considered the contention and rejected it. And it rejected it because the clerks failed to offer any evidence whatsoever that there was even a single filing that was made with an inadequate filing fee on day one that was not corrected until the next day. That is the only circumstance when an inadequate filing would have an impact on the delay calculation. Even their expert relied on the OES filing data without making any modifications whatsoever. And if the clerks felt that this inadequate filing fee had such a huge impact on the delay calculations, they had 18 months after the filing of the complaint before trial to track those delays. They are in complete control of that front counter to just record how many times an inadequate filing fee. If we were to maybe just summarily decide this is something that falls under the First Amendment, you're entitled to these things. Is it something that you could work out together as to what that practical, I'm just thinking about it live, because you're asking the court, once we get into that, and always that's a problem, what is contemporary? What is access? And questions of that nature. You have a goal in terms of obtaining the complaints. They have a goal of doing their job. I don't think there's anything to indicate that they are nefarious in not wanting you to have it. It's basically what they're going to is talking about how practical it is and how much is going to be a burden on the officers and maybe as you say the budget concerns that were brought up and add more people, that sort of thing. But it seems to me there ought to be something you can work out amongst you if you can get off of the business of whether the common law applies or the First Amendment. If we say First Amendment, and I'm just wondering, is this not something that, and I know it's difficult to ask for parties to let's just work this out and rather than having the courts to articulate rules, we then have to formulate, as you say, apply across the board in a very narrow way. Well, Your Honor, prior to filing this lawsuit, courthouse news approached personnel at both courthouses and asked to see specific complaints that had been filed in the course of the day. In both instances, they were told by supervisory personnel that they could not see complaints until they are fully processed and indexed and scanned and posted on the public access terminals in the courthouse. So we attempted to gain access prior to filing suit and the district court considered all of that evidence and also considered the relative burdens on the clerks as demonstrated by the fact that they were able to achieve contemporaneous access after this case was filed and that did not disrupt their operations. How do you see them before they're scanned if you are somewhere in California, you're trying to see a complaint in Virginia? You mean, it actually, in all instances, you're talking about your actual presence at that clerk's office. Is that right? Or are you talking about being able to access it at a distance? The incidents I just mentioned, Your Honor, were our reporter physically going into the courthouse and asking the clerk if they could see specific complaints. So I want to be clear on that because I think the scanning aspect of it seems to me that makes it available in places and maybe you do want to send a reporter to every one of the clerk's offices in every state to access this. I know you have a financial reason for doing this, but I'm just trying to understand that. Your access is you should be able to walk into the clerk's office and immediately see the complaint filed. Respectfully, Your Honor, we do not insist on immediately seeing the complaint filed. Well, let's see it during that day. By the end of the day. But, Your Honor, we would love... But you certainly are talking about one that's filed five minutes before the office is closed. I know that. That's correct, Your Honor. That's why Judge Morgan's statement of the rule, access where practicable, and giving the clerk's wiggle room of up to 15 percent certainly accounts for the case that's filed at the end of the day. As to electronic access in the federal courts, we can see every complaint that's filed in the Eastern District of Virginia online, on Pacer, from any place in the country. But the Commonwealth of Virginia does not provide that kind of electronic access. Hopefully, someday it will. And then this will kind of disappear once all that happens, right? As the District Court observed, may make these issues moot. But what doesn't make this case moot... Can I ask you... Yes, Your Honor. My friend Judge Wynn was trying to maybe broker a settlement. So many times I've been before courts and they've tried to do that. Well, Judge Morgan tried to broker a settlement before trial and after summary judgment and suggested the parameters of where he was going and asked the parties to take off some of the issues off the table and said, this is the world you're in. You're in a First Amendment world and this is needed. But there's a practical aspect of it is, you know, rather than fight in court, can you get together and say, okay, this is what the clerks can do. This is what we would like. And I don't know, it seems like to me that would be a practical way to do this until the technology gets to the point where you've got Pacer and you can pick it up. Well, with all due respect, Your Honor, that is exactly what Judge Morgan attempted to achieve and that failed. And so we were put through 18 months of litigation and a four-day bench trial, following which the district court made evidentiary rulings, findings of fact, and concluded that his concern that the clerks would revert back to their prior practices if he did not issue declaratory relief required him to issue that relief. So I see my time is up, if I may. Your time is up. I just want to ask you one more question. Are you counsel in these or your firm counsel in these other cases? Which other cases, Your Honor? The other cases representing courthouse news. I am counsel. A litigation like this. Right. I personally was counsel. No, your firm. My firm has been counsel in many of the courthouse news cases, but not all, Your Honor. It's a variable. What are the requests for attorney's fees right now in this case? There is, Your Honor, and there is a separate appeal on the district court's award of attorney's fees. And what is the amount? The district court awarded some somewhat, a number somewhat under $2 million in attorney's fees. 1.9 million, right? Right. Yes, Your Honor. And your firm was counsel in both the Seventh Circuit and the Ninth Circuit. That is correct, Your Honor. And you got great big awards there. This is like a goldmine. You just go around the country suing small courthouses so that all of Judge Wynn's good suggestion that you settle this. You're not interested in settling this, right? We were very, Your Honor, we were very interested in settling this before we went to trial on this action and before 18 months of litigation. Okay. Now, just a minute. That's a different time. You told, I thought you just told us that Judge Morgan tried to settle things, but I assume that was after trial, before trial. That was before trial, Your Honor. Sorry? Your Honor, Judge Morgan tried to settle the case before trial and after the summary judgment ruling. Oh, well. And he urged the parties to come to agreement. Before summary judgment ruling, was there any attempt, in other words, early on, was there any attempt to settle this? Well, Your Honor, settlement discussions are privileged discussions, but I can say that is my personal practice. I didn't ask you what they were, I asked you if they took place. There were efforts to settle the case right at the beginning, and they did not go anywhere, Your Honor. And Your Honor, maybe I shouldn't take exception to- Both sides were relying extensively on matters of principle, weren't they? Both sides had the principles that they wanted to litigate, and they ended up with $2 million of legal fees to you all, and now litigating in the Fourth Circuit Court of Appeals. That's going to be, as you said, was somewhat under $2 million. It will be somewhat over $2 million. Well, Your Honor, I said that was the fee award, but the fact is, as the attorney's fee application lays out, Courthouse News expended far more than $2 million in this case, and quite frankly, my client is proud to bring actions in several courts across the country asserting its First Amendment rights, which fewer media outlets are able to do at this time. So, I don't think that Courthouse News, or that counsel, quite frankly, should be criticized for bringing cases that have merit and that assert clear rights under the First Amendment to the Constitution. I wasn't criticizing you. I was trying to identify why you wouldn't settle the case. Your Honor- Yeah. Your point is, it's not a criticism. What you undertaken, you certainly can do it, but when everything points to an incentive to work it out, I guess it was, Deb, is, do you have that incentive in this? I mean, for what I gave, it was a little bit more than Judge Morgan. I said, what if we actually delineate what the law is, and you don't have to argue that point out? Then you come to a point of, can you work these things out? And I mean, there are cases, and particularly in the civil form, if you make an offer, to begin from a monetary perspective, and you don't do any better than that, you don't get any. I mean, you don't get any more. You know, that may be something we may need, at least maybe somebody at Congress or someone needs to deal with, but I guess I'll leave it alone. If I may just comment on that, Your Honor, there was one courthouse news case that I handled in the state of Vermont, and we provided the attorney general of Vermont with a copy of our preliminary injunction papers before we filed them. We said, we would like you to look at the law here. We think we are right. And after 30 days, the state of Vermont agreed with us and changed the particular rule that we were going to oppose in that lawsuit. And my client incurred substantial fees in preparing that case and preparing those preliminary injunction motion papers. And we did not seek an attorney's fee, nor could we, nor did we want to, because that was the appropriate result in that case. Did you attempt that here, sir? Yes. Yes, Your Honor. Exactly the same thing. You gave them a model complaint. After the case was filed, I personally attempted it. And before the case was filed, our personnel went to the courthouse and asked for access to these newly filed complaints. And at the time that they were seeking access, there were delays of many days in seeing newly filed civil complaints in these courthouses. So this was something that was attempted and that failed. Well, we kept you over your time too. And I know you have a colleague that is going to speak to us, and then we have rebuttal. So we will have to thank you very much for your time. We also have an amicus, Your Honor. Yes, I'm listening. I mean, that's what I said, your friend here. Thank you, Your Honor. Thank you. Ms. Nelson? Yes. Good afternoon, Your Honors, and may it please the Court. Jennifer Nelson for Amici Curie, the Reporters Committee for Freedom of Press and 28 media organizations. Your Honors, I'd like to focus my time today on how important timely access to newly filed civil complaints is from a practical level. As news organizations, Amici rely on the contemporaneous right of access to newly filed civil complaints every day to report the news to the media. Some of the Amici here are CNS subscribers, including the Associated Press, Gannett, Boston Globe Media Partners, and Sinclair Broadcast Group. This means that CNS is a And many other news organizations send their reporters to courthouses on a daily basis to access newly filed civil complaints so that they can report news to the public when it is fresh. As a result, the Court's decision today will have a direct impact on the press's ability to obtain contemporaneous access to civil complaints, and therefore on the public's ability to know what's happening in the judicial system. The Supreme Court has recognized timeliness as a fundamental aspect of the news. Freshness and speed are key aspects of reporting, especially in today's fast-paced digital environment. And civil complaints are most newsworthy when they are filed. That's why many CNS subscribers... So your whole argument is going to first, assuming we're going to accept that this is a First Amendment matter, under which we apply the experience and logic test, and then from a contemporaneous, contemporaneity perspective, you are saying that that time period should be what? How are you defining that term? Of course, Your Honor. It is amici's position that contemporaneous means the same-day access. And the District Court found here that on the same day of filing and so far as practicable, and if not practicable within one court day to allow for certain factual findings that were made during the course of the... So no later than the following day after filing, essentially. For purposes of this case, amici supports CNS's position that that's satisfied. And yes, you know, to answer your question, Judge, amici joined Apelli in emphasizing that every federal court to reach this issue has held, as the District Court held below, that the First Amendment right of access applies to civil complaints at the time that they are filed. And how do you define access? Of access being able to obtain the original source document, the civil complaint, which... How? How do you do that? So it would depend, Your Honor, on how it is filed in certain of the Virginia courts that issue in this case, where paper filing is still the practice that involves going to the courthouse and accessing either via the clerk's office or the public terminal. The complaint, at the end of the day, as I mentioned, you know, reporters have traditionally gone to clerk's offices all over the country. Sure, sure. Do you maintain there's any right to have, to be able to access this on the web or through the internet or through any electronic means? Amici certainly supports advances in technology that have allowed... Not a question of whether you support it. Do you maintain that is one of the requirements? In other words, if that technology is available, then is it then required to be on the internet or just what others are doing, just available if you show up and get it? That is not an issue before this court. To the extent that electronic filing is eventually available, certainly that is an extreme benefit and has greatly increased access to judicial records around the country in the past decades. But for purposes of this case, where paper filing is still proceeding, that access involves access at the courthouse for purposes of this matter, Your Honor. All right. Thank you. So I'm sorry to tell you that you too have gone over your time and the time is getting late when you just conclude with like two sentences. Of course, Your Honor. If I could just make one additional point. The public also benefits tremendously in terms of being able to accurately report to the public when they have access to the original source document, in this case, civil complaints. The media often includes hyperlinks to civil complaints in its reporting when they are filed. And Virginia law actually underscores the desirability of timely access to court records. See, the only problem I'm having, I think you got a good argument. The reason I went there is that's a good policy argument. Sounds like it'd be good for a congressional hearing. I'm trying to tie it into which legal issue are you making this? Other than it's a good idea. Whatever you do is going to be good for the people and it's going to be great. Well, when you're dealing with a legal constitutional issue, sometimes we just have to make it like the law says it is. And that's the only reason I brought it up. I went there to say, how are you tying this into the legal issue that's before us? Of course, Your Honor. Because I know the courts write these policy opinions and they got this thoughts and wills and we're doing a good thing. But we really ought to write them based upon the law. Well, Judge, of course. And in company Doe v. Public Citizen, this court held that we're first amendment right of access attaches. Access must be contemporaneous. And of course, we've been grappling with what that term means here today. Emphasizing the underlying reasons behind why we are arguing what contemporaneous means, what it means is critically important to the press's right of access and the public's ability to understand our judicial system. Thank you very much. Thank you. Meekie, I agree with CNS at the court. Thank you, sir. Do you have rebuttal? Yes, Your Honor. And I know we're at the end of the day. I'm going to be very brief here. There's a critical piece of the puzzle here that I think is very important for the court to understand. And that is that if you look at the complaint that CNS filed in this case, the complaint was about what CNS calls behind processing access. So they were asking us to court system, which we have always maintained is untenable, and it is absolutely untenable. By the time we got to the 30 v. 6 deposition, and this is actually in the record. You mean when you say untenable, you mean you couldn't do it or was unreasonable? We cannot change the order that we do the administrative processing for extremely complex reasons that are beyond the scope of this appeal without adversely affecting the public's access to that information, because we're already doing it as efficiently as we can. So at the 30 v. 6 deposition, the Southeast Regional Bureau Chief for CNS, Ryan Abbott, testified that he was seeking 100% same day. It wasn't until we got to trial where suddenly 85% to 90% was good enough. So for the purposes of the voluntary cessation argument, I think it's important to understand that, you know, and we talked past each other with the district court about this repeatedly, that we never said that we couldn't provide the information as quickly as we were providing it. What we were never willing to do was to completely turn OES's, not the clerk's, the office of the executive secretary's system for processing these complaints on its head in order to comply with this 100% same day availability standard of care. So when we get into a voluntary cessation for purposes of mootness, your honors, I'd ask the court to consider the fact that the CNS was before this case was filed. And the evidence was that as soon as we were aware of their complaints, that the problem in CNS's mind, at least according to the position they took at trial, was completely rectified. But that doesn't reflect a voluntary cessation. There's no finding from the district court in this case that the clerks have engaged in any unconstitutional policy. There was never a letter sent to either of these clerks. There was never a meeting with either of So as soon as the clerks find out that they have a problem, and okay, so they go back and they look at their system and they figure out that they're doing things faster. I mean, Judge Morgan used the word prodded. He said that Clerk Schaefer prodded his deputy clerks to work harder to get the complaints done. But that doesn't reflect an unconstitutional customer practice. That reflects that CNS had a grievance with the clerk's office about how quickly they were getting access. And they surreptitiously collected all this data for six months without having a single meeting with these clerks. And then they hit us with a lawsuit. And then when the numbers dramatically improved because suddenly we have notice of this issue, the court calls that a voluntary cessation. That's not a cessation. So what should we do? Send it back to the judge to allow for more this? No, Your Honor, that all of this evidence was in the record at trial. The district court simply disregarded it and reaching the conclusion that the First Amendment Amendment had been violated. The only relief that is appropriate here is for this court to enter a judgment for the clerks, reverse the district court's opinion and vacate the award of attorneys fees in this case, either because the First Amendment was not violated or if the court disagrees because the contemporaneous standard of care in this case is not a proper statement of the law, because this court is concerned about the momentous federalism problems with the judiciary's entanglement with state court clerk. Certain issues were certified to us. I don't think that was, isn't that correct? And Judge Motz, I'm glad you asked that question. We have also filed an in this case has been finally adjudicated. The injunction, the request for injunctive release was dismissed. Declaratory relief was awarded. The court did retain jurisdiction over the case, but this court has repeatedly said that simply retaining jurisdiction for enforcement purposes does not make a judgment non final. Indeed, if you look at the record, the only thing we have a final order appeal, that's for sure, right? Yes, Judge King. Absolutely. And I believe that that puts the issues of the improper venue with respect to Clerk Smith, whose constituency is in Prince William, and she was tried before a Norfolk judge in this case, and the issue of abstention squarely before this court. If you look at the Rule 58 case law, and there was never a separate document objection made in this case, and we're certainly 150 days past the entry of that judgment. But if you look at the Rule 58 case law, this court has repeatedly said that the separate document rule exists to protect appellate rights and litigates ability to seek appellate review, not as a sword to defeat an appeal that would otherwise be proper. So if this court finds that our notice of appeals not properly lodged, then the result is going to be that you're going to remand those issues back to the district court, and we're just going to come right back as soon as the court enters a Rule 58 separate document. So I don't see any value in the court declining to review those issues in one appeal. Your Honors, I really appreciate your time and the extra time that you've given both of the parties in this case. I believe this is an important case. I'm out of time, so you all have a good day. Thank you for your consideration. Thank you very much. Thank you all. Good health. Thank you. Thank you. I think I'll ask the clerk to adjourn court. I think the court is adjourned until tomorrow morning. God save the United States and his Honorable Court.
judges: Diana Gribbon Motz, Robert B. King, James A. Wynn Jr.